**SO ORDERED: October 16, 2018.**



_____
Jeffrey J. Graham
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 18-07762-JJG-11 |
| FAYETTE MEMORIAL HOSPITAL ) | |
| ASSOCIATION, INC. d/b/a FAYETTE ) | |
| REGIONAL HEALTH SYSTEMS, ) | |
|     Debtor. ) | |
| ) | |

## INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL
## AND PROVISION OF ADEQUATE PROTECTION

This matter is before the Court on the *Debtor's First Day Motion Pursuant to 11 U.S.C. §§ 363, 361, and 105, for Authorization to Use Cash Collateral and Provide Adequate Protection* [Docket #4] (the "**Motion**")[1] filed by Fayette Memorial Hospital Association, Inc. d/b/a Fayette Regional Health Systems ("**Fayette Regional**" or the "**Debtor**") seeking an order authorizing the estate's use of certain cash collateral and the provision of adequate protection.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Notice of the Motion, together with notice of the hearing on the Motion having been given pursuant to S.D. Ind. Bankr. R. B-9013-3, to the Office of the United States Trustee, the secured creditors of the Debtor, and to the Debtor's twenty (20) largest unsecured creditors, and all intervenors and counsel of record, and the Court having conducted a hearing on the Motion, having considered the relief requested in the Motion, and having considered the Declaration of Randall White, in support thereof, and being otherwise duly advised in the premises, HEREBY FINDS AS FOLLOWS:

## FINDINGS OF FACT

### JURISDICTION AND VENUE

A.     On October 10, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtor seeks to operate its businesses and manage its property as debtor-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

D.     No Committee of Unsecured Creditors has yet been appointed in this bankruptcy case.

### DEBTOR'S BUSINESS OPERATIONS

E.     The Debtor is an Indiana not-for-profit corporation that does business as Fayette Regional Health Systems.

F.     The Debtor operates a 112-bed acute care hospital, and provides both inpatient, outpatient, emergency, and other ancillary services from its locations in Connersville, Fayette County, Indiana.  The hospital and the primary business operations of the Debtor are located at 1941 Virginia Avenue, Connersville, Indiana 47331.

G. The Debtor's operations include a 46-bed residential substance abuse detoxification treatment facility known as North Star Recovery ("**North Star**") that opened for operations within the last few months.

H. The Debtor is also a 51% member in Fayette Regional Health System Pain Management, LLC, an Indiana limited liability company that operates a pain management clinic. The remaining 49% ownership in Fayette Regional Health System Pain Management, LLC, is held by Connersville Pain Management, LLC, an unrelated Ohio limited liability company.

I. At the time of filing, the Debtor had approximately 516 employees (389 full-time and 127 part-time). The Debtor also maintains independent contractor relationships with a variety of individuals and entities that provide healthcare services for the entity's patients.

J. The Debtor owns real property and improvements at 1941 Virginia Avenue, Connersville, Indiana 47331 (the "Hospital Property"), as well as real property and improvements at other locations in the area, and also leases certain properties for its operations.

### THE CASH COLLATERAL

K. As of October 9, 2018, the Debtor believes its accounts receivable totaled approximately $18,734,410 of which, approximately $12,116,155 was under 90 days (the "**Accounts Receivable**").

L. The Debtor further represented that as of the Petition Date, the Debtor's bank accounts, collectively, other than Comerica Bank Account x0696 and the Comerica Sinking Fund Account, contained cash in the total combined amount of approximately $130,000.00 (the "**Cash**" and together with the Accounts Receivable, the "**Cash Collateral**").

M. The Debtor further represented that it maintains the following bank accounts with Comerica, with the estimated Petition Date balances as set forth below:

3

| Account Name | Account No. | Approx. Petition Date Balance |
| --- | --- | --- |
| Operating Account (the "Comerica Operating Account" | x0570 | $50,000 |
| Disbursement Account (Payables Account) | x0539 | $0 |
| Sinking Fund Account | x1466 | $204,500 |
| Cash Collateral Account for Letter of Credit | x0696 | $198,000 |
| Inactive Account (Insurance Claims Acct) | x0513 | $0 |
| Inactive Account (FSA Account) | x0521 | $0 |

(together, the "Comerica Bank Accounts")

### FINANCIAL AND ORGANIZATIONAL STRUCTURE

N.      By virtue of the loan documents and the transactions described in more detail in the Motion, including but not limited to, the Master Trust Indenture and the supplements thereto, The Bank of New York Mellon Trust Company, as successor trustee to Fifth Third Bank of Central Indiana ("**BNY**" or the "**Bond Trustee**") and Comerica Bank ("**Comerica**") claim a security interest in the Cash Collateral and in all Comerica Bank Accounts.[2]

O.      AmerisourceBergen Drug Corporation ("ABDC") claims a first priority security interest in inventory sold to the Debtor by ABDC prior to the petition date and the proceeds thereof (the "ABDC Collateral").

P.      The Debtor has indicated it is unaware of any other creditors claiming a security interest in the Debtor's Cash Collateral.

### RELIEF REQUESTED BY THE DEBTOR

Q.      By the Motion, the Debtor seeks entry of an order authorizing the Debtor to utilize Cash Collateral in accordance with the budget projections attached hereto as Exhibit A (the

---

[2] The Bond Trustee also claims that Wells Fargo Bank, N.A. is a *de minimis* holder and that its interests are *pari passu* with Comerica's interests granted to the Bond Trustee under the Master Trust Indenture (as amended). The Bond Trustee also claims a security interest by virtue of the secured notes (Series 2013A, 2013B, and 2013C) and all other related documents, including, without limitation, all security agreements, mortgages and other security documents executed by Debtor in favor of the Bond Trustee.

4

"**Projections**") and seeks authority to provide adequate protection to the Bond Trustee, to Comerica and to ABDC.

R. The Debtor contends that if it is not permitted to use the Cash Collateral, it will be unable to pay necessary expenses for labor, material and services related to the operation of its business, and as such, entry of this Interim Order will enhance the possibility of maintaining the value of estate assets for the benefit of all creditors and equity interests, including the Bond Trustee and Comerica.

S. The Debtor asserts that the Cash Collateral will be used by the Debtor to pay actual expenses of the estate necessary for: (1) the maintenance and preservation of assets, including adequate protection payments as authorized or directed by the Court; (2) the continued costs of operating its business, including payment of payroll and employee-related expenses, equipment leases, cost of supplies, third party services, and insurance expenses; (3) professional fees incurred and authorized to be paid in this bankruptcy case, and (4) to pay the fees due the Office of the United States Trustee, if any, during the relevant time period, all as more fully described in the Projections attached hereto as Exhibit A.

### RESERVATION OF RIGHTS

T. Notwithstanding any other provision herein, the Debtor, the United States Trustee, any Unsecured Creditors Committee appointed in this Bankruptcy Case, and any creditor or party in interest shall have the right to challenge the claims BNY and/or Comerica to first priority perfected security interests and liens in the Cash Collateral, or any other assets of the Debtor, on or before expiration of the period ending on the earlier of 90 days from appointment of a Committee or 120 days from the Petition Date.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:**

5

1. <u>Authorization to Use Cash Collateral</u>. Subject to the terms hereof, Debtor may utilize Cash Collateral through October 31, 2018, or (subject to the consent of BNY, Comerica and ABDC) through such other date on which the Court conducts a final hearing on the Motion, only to pay the actual, ordinary, necessary, and reasonable operating expenses of the Debtor, and only as described by line item in the Projections, and for payment of any fees due the United States Trustee during the term of this Order.

2. <u>Payment of Post-Petition Taxes</u>. The Debtor shall pay when due, all taxes, insurance, assessments and governmental and other charges accrued post-petition, including any and all federal and state withholding taxes, and shall provide to the Bond Trustee, Comerica, and ABDC on request, copies of depository receipts or other satisfactory evidence of the same.

3. <u>Termination of the Right to Use Cash Collateral</u>. An Event of Default for purposes of this Interim Order shall include, but not be limited to:

   a. Failure to comply with any of the adequate protection or reporting obligations set forth herein;

   b. Failure to comply with any terms of this Interim Order;

   c. The Debtor makes any payment not set forth in the Projections, except that, as necessary to maintain the business operations, the Debtor may exceed the budgeted expenditures in a particular category only to the extent the Debtor limits or reduces its expenditures in other categories, so the resulting effect is that the total expenditures during the budget period do not exceed 105% of the total expenses outlined in the Projections; and/or

   d. Dismissal or conversion of this case or appointment of a Chapter 11 trustee or examiner.

Unless extended by the Court upon the written agreement of the Bond Trustee, Comerica and ABDC, the Debtor, and any Committee appointed in this Bankruptcy Case, this Interim Order and the Debtor's authorization to use Cash Collateral pursuant to this Interim Order will immediately terminate on the earlier to occur of: (a) the date on which the Bond Trustee, Comerica or ABDC provide, via facsimile or overnight mail, written notice to the Debtor and Debtor's counsel of the occurrence of an Event of Default (as defined above) and the expiration of a three (3) business day cure period; or (b) October

6

31, 2018 (the "**Termination Date**"). On or before the Termination Date, the Bond Trustee, Comerica, ABDC and the Debtor (and any Committee appointed in this case) shall be entitled to apply to this Court for all appropriate relief, including entry of a permanent order, upon such notice as may be appropriate under the circumstances. In the event of an uncured Event of Default, the Bond Trustee, Comerica and ABDC shall be entitled to seek relief from the automatic stay on an expedited basis, and the Debtor will not contest a request for expedited hearing. If the Interim Order is terminated: (1) the obligations of the Debtor and the rights of the Bond Trustee, Comerica and ABDC, with respect to all transactions which have occurred prior to the Termination Date, shall remain unimpaired and unaffected; and (2 the Bond Trustee, Comerica, ABDC and the Debtor shall retain all of their respective rights and remedies under the Bankruptcy Code, including, without limitation, the Debtor's right to request the continued use of Cash Collateral, and the rights of the Bond Trustee and/or Comerica and/or ABDC to contest such continued use of Cash Collateral.

4.      <u>Replacement Liens for the Bond Trustee.</u>  To the extent the Bond Trustee has valid, enforceable, perfected, and unavoidable prepetition liens on or security interests in the Cash Collateral used by the Debtor (the "**Bond Trustee Prepetition Liens**"), the Bond Trustee is hereby granted, to the extent the Cash Collateral suffers a diminution in value, post-petition liens which shall be Priority Liens in the following property of the Debtor as described in the 2013 BNY UCC-1:

> All of the Debtor's right title and interest in and to: (i) the Gross Revenues (subject in all cases to Permitted Encumbrances) as defined in the Master Trust Indenture between Fayette Memorial Hospital Association, Inc. and The Bank of New York Mellon Trust Company, N.A. (ultimate successor to Fifth Third Bank of Central Indiana), as Trustee (the "Trustee"), dated as of November 1, 1992 (as amended, the "Master Indenture"); and (ii) any and all moneys and securities held by the Trustee pursuant to the Master Indenture. Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Master Indenture.

and in the collateral described in the 2016 Mortgage and the 2016 BNY UCC-1 (together, the "Bond Trustee Collateral").

Such replacement liens in the Bond Trustee Collateral shall be to the same extent and with the same

7

validity and priority in the estate's pre-petition assets and proceeds thereof that it held prepetition, subject only to the claim of the Office of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a), and expressly excluding claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(b) (the "**Bond Trustee Replacement Liens**"). The Bond Trustee Replacement Liens: (1) are and shall be in addition to the Bond Trustee Prepetition Liens; and (2) shall remain in full force and effect notwithstanding any subsequent conversion of the Bankruptcy Case. None of the Bond Trustee's prepetition interests, including its security interest in and any right of set off against the Comerica Bank Accounts, are impaired by this order, generally, or by Debtor's ability to use cash collateral.

5. <u>Replacement Liens for Comerica</u>. To the extent Comerica has valid, enforceable, perfected, and unavoidable prepetition liens on or security interests in the Cash Collateral used by the Debtor (the "**Comerica Prepetition Liens**"), Comerica is hereby granted, to the extent the Cash Collateral suffers a diminution in value, post-petition liens which shall be Priority Liens in the following property of the Debtor described in the Comerica UCC-1:

   a. all of Debtor's right, title and interest (including without limitation, security entitlement) in custodial securities account no. [x0696] maintained at [Comerica], all sub-accounts thereof (collectively, the "Accounts") and all cash, securities, investment property or financial assets now or hereafter deposited or maintained in, or credited to, the Account, and any and all securities accounts in substitution or replacement thereof;

   b. all general intangibles (including without limit software) acquired or used in connection with the above; and

   c. all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock splits, stock rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor.

and together with the Comerica Bank Accounts (the "**Comerica Collateral**").

Such replacement liens in the Comerica Collateral shall be to the same extent and with the same validity and priority in the estate's pre-petition assets and proceeds thereof that it held prepetition, subject only to the claim of the Office of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a), and notwithstanding the language of the collateral description above, expressly excluding claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(b) (the "**Comerica Replacement Liens**").  The Comerica Replacement Liens: (1) are and shall be in addition to the Comerica Prepetition Liens; and (2) shall remain in full force and effect notwithstanding any subsequent conversion of the Bankruptcy Case.  None of the Comerica's prepetition interests, including its security interest in and any right of set off against the Comerica Bank Accounts, are impaired by this order, generally, or by Debtor's ability to use cash collateral.

6. <u>Replacement Liens for ABDC</u>.  To the extent ABDC has valid, enforceable, perfected, and unavoidable prepetition liens on or security interests in the Cash Collateral used by the Debtor (the "**ABDC Prepetition Liens**"), ABDC is hereby granted, to the extent the Cash Collateral suffers a diminution in value, post-petition liens which shall be Priority Liens in the following post-petition property of the Debtor described in the UCC-1 Financing Statement filed by ABDC on or about July 22, 2014 as amended on April 16, 2015 (the "ABDC UCC-1"):

> All of Debtor's inventory purchased or otherwise acquired from [ABDC] or its affiliates, successors, and assigns, whether now owned or hereafter acquired, including without limitation, the proceeds thereof.

(the "ABDC Collateral").

Such replacement liens in the ABDC Collateral shall be to the same extent and with the same validity and priority in the estate's pre-petition assets and proceeds thereof that it held prepetition, subject only to the claim of the Office of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a), and expressly excluding claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(b) (the "**ABDC Replacement Liens**").  The ABDC Replacement

9

Liens: (1) are and shall be in addition to the ABDC Prepetition Liens; and (2) shall remain in full force and effect notwithstanding any subsequent conversion of the Bankruptcy Case.

7. <u>No Change to Priority of Liens.</u> Nothing contained in this order is intended to affect or modify the priority of liens as among the Bond Trustee, Comerica or ABDC.

8. <u>Additional Adequate Protection for Comerica, the Bond Trustee and ABDC.</u> In the event that the adequate protection provided to Bond Trustee, Comerica, and/or ABDC is insufficient to protect Bond Trustee, Comerica or ABDC for Debtor's use of cash collateral or for a diminution in value of Bond Trustee, Comerica, or ABDC's other collateral, then to that extent, Bond Trustee, Comerica, and ABDC's claims shall have priority under § 507(b) of the Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) of the Code (other than U.S. Trustee fees). Notwithstanding any provision herein, the Bond Trustee, Comerica, and/or ABDC may later seek from the estate additional adequate protection other than that stated herein. As additional adequate protection for use of the Cash Collateral, and in addition to the replacement liens described above, the Debtor shall, from and after the Petition Date until repayment of the indebtedness to the Bond Trustee, Comerica, and/or ABDC, as applicable:

   a. On a daily basis, transfer all funds from the U.S. Bank lockbox account (x5957) to the Comerica Operating Account (x0570), and utilize the Comerica Operating Account for all disbursements during the term of this Interim Order;

   b. deliver to the Bond Trustee, Comerica and ABDC: (1) copies of all financial or other information reasonably requested; (2) copies of all operating reports and other financial information filed with the Bankruptcy Court concurrently with the filing thereof; and (3) all other reports or financial information historically provided by the Debtor, with the same frequency and on the same timelines as it has historically been provided;

   c. at all times comply with all laws, statutes, rules, regulations, order and directions of any governmental authority having jurisdiction over the property of the estate;

   d. maintain all insurance coverage required to be maintained under the prepetition agreements with the Bond Trustee, Comerica, and ABDC and the underlying loan documents and, on request, provide the Bond Trustee, Comerica and/or ABDC, as applicable, with copies of the current certificates and policies of insurance, and

10

       promptly after renewal of coverage or after the effective date of coverage (in the event there is a change in insurance carriers);

e. comply with all other non-monetary obligations under the terms of and, to the extent the Debtor is not already in violation of, the prepetition agreements and underlying loan documents between the Debtor and the Bond Trustee, Comerica and ABDC, as applicable;

f. keep current in deposit and payment of all current tax liabilities as they become due by properly making all federal income tax withholding and FICA tax deposits and all federal FUTA tax deposits; and

g. timely file any and all necessary Federal tax returns with the Internal Revenue Service.

9. <u>Inspection of Books and Records</u>. Upon five (5) business days' notice by the Bond Trustee and/or Comerica, and/or ABDC, as applicable, the Debtor shall permit the Bond Trustee and/or Comerica and/or ABDC and their respective agents full and free access to Debtor's books and records in the possession and control of the Debtor, and place of business to verify the existence, condition, and location of property in which the Bond Trustee and/or Comerica and/or ABDC claim a security interest. Failure to satisfy this provision of this Order shall not be deemed a technical Event of Default unless determined to be so by the Court.

10. <u>Force and Effect of Prepetition Documents; Conflicts</u>. Except as modified herein and subject to the other provisions of this Interim Order and the Bankruptcy Code, the underlying loan documents and prepetition agreements, and the terms and provisions thereof shall remain in full force and effect. To the extent there exists any conflict among the Motion, the underlying loan documents, and the terms of this Interim Order, this Interim Order shall govern and control.

11. <u>Incurrence of Additional Secured Debt Prohibited</u>. No order shall be entered in this case authorizing the estate to incur debt secured by a lien which is equal to or superior to the Prepetition or Additional Liens (the "**Aggregate Liens**"), or which is given superpriority administrative expense status under 11 U.S.C. § 364(c)(1), unless such debt is sufficient to repay, in full, any debt to the Bond Trustee, Comerica and ABDC, without the Debtor obtaining the consent

11

to same from the Bond Trustee, Comerica and ABDC, or a court order authorizing such debt.

  12. <u>No Waiver of Rights under the Prepetition Documents</u>. This Interim Order shall not constitute a waiver by the Bond Trustee, Comerica or ABDC of any of their respective rights under the notes or the loan documents, the Bankruptcy Code or other applicable law, including, without limitation: (1) the right to assert that, notwithstanding the terms and provisions of this Interim Order, any of their respective interests in the assets of the Debtor and/or Cash Collateral lack adequate protection within the meaning of 11 U.S.C. §§ 362(d) or 363(e); or (2) the right to assert a claim under 11 U.S.C. § 507.

  13. <u>Binding Effect of this Interim Order</u>. If this Interim Order never becomes a final and non-appealable order, if the Debtor terminates this Interim Order, or if any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral used prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Interim Order).

  14. <u>Continued Effect, and Successors and Assigns</u>. This Interim Order shall be and remain in full force and effect notwithstanding conversion of the Bankruptcy Case or entry of an order appointing a Trustee. Without limiting the generality of the foregoing, the Additional Liens and security interests granted to the Bond Trustee shall survive expiration of this Interim Order. Furthermore, the terms and provisions of this Interim Order shall be binding upon and inure to the benefit of the Bond Trustee, Comerica and ABDC, the Debtor, the estate, and their respective successors and assigns, including, without limitation, any Debtor or other fiduciary who hereafter succeeds to Debtor's estate in the Bankruptcy Case or in any succeeding or superseding case or

proceeding commenced by or against the Debtor or the estate under the Bankruptcy Code or any similar or subsequent law.

15. <u>Termination of Authority to Use Cash Collateral</u>. The authority to use Cash Collateral granted to the Debtor by this Interim Order shall expire on the Termination Date unless extended by further order of this Court. The Debtor's right to use Cash Collateral pursuant to the terms of this Interim Order may be extended beyond the Termination Date, from time to time upon the filing of a Stipulation by and among the Debtor, any Committee appointed in this Bankruptcy Case, the Bond Trustee, Comerica and ABDC (the "**Stipulation**") not later than the seventh (7th) business day after the date of expiration of the term of this Interim Order, (the "**Term**") or any subsequently extended Term, which Stipulation shall provide for such an extension, shall include new Projections for the entire period of such extension, and shall provide that all other appropriate terms and conditions of this Interim Order remain in full force and effect during the period of such extension. Any Stipulation providing for an extension of the Term shall be served on the United States Trustee, all counsel of record and intervenors, and the twenty largest unsecured creditors or the Creditors' Committee, if one exists. Any objections to any Stipulation must be filed with this Court not later than seven (7) days after the date of the filing of the Stipulation and notice of the Stipulation as provided for in the local rules or by order of the Court. If no objections are timely filed, such Stipulation shall be deemed approved and effectuated pursuant to this Interim Order. If any objection is timely filed, the Court shall set a hearing to consider the Stipulation and the objection; provided, however, that the Term shall be deemed extended, subject to the terms and provisions of such Stipulation (including any Projections attached thereto), and such Stipulation shall be deemed approved, effective, and binding on Debtor from the date it is filed until further order of this Court after such hearing. If a Stipulation is not timely filed as provided above, or if the Debtor, any Committee appointed in this Bankruptcy Case, or the Bond Trustee, Comerica, or ABDC earlier file a notice with this Court indicating that it

will not enter into such a Stipulation, notice shall be issued and a hearing shall be held as soon as practicable on any request by the Debtor for continued use of Cash Collateral after expiration of the Term (as it may be extended from time to time).

IT IS FURTHER ORDERED, and NOTICE IS HEREBY GIVEN that a further hearing on the Motion shall be held at 10:00 A.M. on the 30th day of October, 2018, before Judge Jeffrey Graham, United States Bankruptcy Court, Birch Bayh Federal Building and United States Courthouse, 46 E. Ohio Street, Room 311, Indianapolis, Indiana 46204. Any creditor or other interested party having any objection to this Interim Order shall file a written objection with the Clerk, United States Bankruptcy Court, 46 E. Ohio Street, Room 116, Indianapolis, Indiana 46204, and serve it upon the Office of the United States Trustee, Attn. Ronald Moore, 101 W. Ohio Street, Ste. 1000, Indianapolis, IN 46204 (e-mail: ronald.moore@usdoj.gov); counsel for the Debtor, Wendy D. Brewer, Fultz Maddox Dickens PLC, 333 N. Alabama Street, Ste. 350, Indianapolis, IN 46204 (e-mail: wbrewer@fmdlegal.com) and Laura M. Brymer, Fultz Maddox Dickens PLC, 101 S. Fifth Street, 27th Floor, Louisville, KY 40202 (email: lbrymer@fmdlegal.com); counsel for the Bond Trustee, Alan K. Mills, Barnes & Thornburg LLP, 11 S. Meridian Street, Indianapolis, IN 46204 (e-mail: amills@btlaw.com); and counsel for Comerica, Jaimee L. Witten and Robert Diehl, Bodman PLC, 6th Floor at Ford Field, 1901 St. Antoine Street, Detroit, MI 48226 (e-mail: jwitten@bodmanlaw.com and rdiehl@bodmanlaw.com) and Terry Hall, Faegre Baker Daniels, 300 N. Meridian Street, Ste. 2700, Indianapolis, IN 46204 (terry.hall@faegrebd.com), and counsel for ABDC, Morton R. Branzburg, Klehr Harrison Harvey Branzburg, LLP, 1835 Market Street, Suite 1400, Philadelphia, PA 19103 (email: mbranzburg@klehr.com) not later than three (3) business days prior to the hearing.

IT IS FURTHER ORDERED that the Debtor shall serve a copy of this Interim Order and

14

notice by first class mail, facsimile or e-mail, within one (1) business day from the date hereof, on the Office of the United States Trustee, the Bond Trustee, Comerica, ABDC, the Debtor's other secured creditors, the twenty (20) largest unsecured creditors, and all intervenors and counsel of records, to the extent such persons/entities do not already receive a copy through the Court's electronic filing system.

# # #

Fayette Regional Health System
Cash Flow Budget
For Period 10/10/18 through 10/31/18

|  | Oct-18 |  |
|---|---:|---|
| **Beginning Operating Cash Balance 10/10/18** | 129,909.94 | |
| Cash Receipts (Patient) 10/10/18-10/31/18 | 2,350,000.00 | |
| Cash Receipts (340B) 10/10/18-10/31/18 | 90,000.00 | |
| Cash Receipts (Grant/Gift) 10/10/18-10/31/18 | 502,732.00 | |
| **Total Cash Receipts 10/10/18-10/31/18** | 2,942,732.00 | |
| | | |
| **Operating Expenses 10/10/18-10/31/18** | | |
| Payroll, Taxes, Child Support, Retirement | 1,860,000.00 | Oct Payroll represents cash funding on 10/17 and 10/31 |
| Group Insurance - SIHO (Premiums) | 105,000.00 | (Self funded health ins) |
| Employee Benefits | 40,000.00 | (Dental, Vision, Life) |
| Contract Labor Non-physician | 75,000.00 | |
| Systems Support | 40,000.00 | |
| Athena EMR System | 0.00 | |
| Purchased Services | 93,733.83 | |
| Professional Fees - Physician Only | 161,800.00 | |
| Supplies (chargeable, drug, IV) | 190,000.00 | |
| Office Supplies | 1,500.00 | |
| Minor Equipment Expense | 0.00 | |
| Postage/Freight | 1,200.00 | |
| Repairs/Mainenance | 0.00 | |
| Rental charge | 4,500.00 | |
| Interest (Comerica Bond) | 0.00 | |
| Med Equipment Support Expense | 1,000.00 | |
| Sponsorship/Marketing | 0.00 | |
| Insurance - General Liability | 55,000.00 | Finance arrangement for all business insurance policies |
| Utilities Electric | 0.00 | |
| Utilities Water | 0.00 | |
| Utilities Gas | 0.00 | |
| Utilities Phone/Internet | 0.00 | |
| Legal Fees | 0.00 | |
| Auditing/Accounting Fees | 0.00 | |
| Chapter 11 Debtors Counsel | 0.00 | |
| Counsel to the Official Committee of Unsec Creditors | 0.00 | |
| Claims Agent/Notice Fees | 0.00 | |
| Robert Half Agency (Interim CFO) | 0.00 | Paying 4 weeks prepaid 10/09 |
| Security deposit - Utilities | 150,000.00 | |
| Possible Critical Vendor Payments | 0.00 | (If requested and approved by Court) |
| HIP 2.0 FSSA Fees | 0.00 | |
| **Total Operating Expenses** | 2,778,733.83 | |
| | | |
| **Net Cash Flow** | 163,998.17 | |
| | | |
| **Ending Cash Balance 10/31/18** | 293,908.11 | |

Both include pre-petion self funded health claims