SO ORDERED: October 31, 2018.



_____
Jeffrey J. Graham
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 18-07762-JJG-11 |
| FAYETTE MEMORIAL HOSPITAL ) | |
| ASSOCIATION, INC. d/b/a FAYETTE ) | |
| REGIONAL HEALTH SYSTEMS, ) | |
|     Debtor. ) | |
| ) | |

**SECOND INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVISION OF ADEQUATE PROTECTION**

This matter is before the Court on the *Debtor's First Day Motion Pursuant to 11 U.S.C. §§ 363, 361, and 105, for Authorization to Use Cash Collateral and Provide Adequate Protection* [Docket #4] (the "**Motion**")[1] filed by Fayette Memorial Hospital Association, Inc. d/b/a Fayette Regional Health Systems ("**Fayette Regional**" or the "**Debtor**") seeking an order authorizing the estate's use of certain

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

cash collateral and the provision of adequate protection and the *Interim Order Authorizing Use of Cash Collateral and Provision of Adequate Protection* (the "**First Interim Order**") [Docket #31].

Notice of the Motion and the First Interim Order, together with notice of the hearing on the Motion as set forth in the First Interim Order having been given pursuant to S.D. Ind. Bankr. R. B-9013-3, to the Office of the United States Trustee, the secured creditors of the Debtor, and to the Debtor's twenty (20) largest unsecured creditors, and all intervenors and counsel of record, and the Court having conducted a hearing on the Motion, having considered the relief requested in the Motion, and having considered the Declaration of Samantha Bell-Jent, in support thereof, having been advised that the form of order has been approved by Counsel for the Bond Trustee, Comerica, and ABDC (each as defined herein), and being otherwise duly advised in the premises, HEREBY FINDS AS FOLLOWS:

## FINDINGS OF FACT

### JURISDICTION AND VENUE

A.On October 10, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor seeks to operate its businesses and manage its property as debtor-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

B.This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

D.No Official Committee of Unsecured Creditors has yet been appointed in this case.

### DEBTOR'S BUSINESS OPERATIONS

E.The Debtor is an Indiana not-for-profit corporation that does business as Fayette Regional Health Systems.

F.      The Debtor operates a 112-bed acute care hospital, and provides both inpatient, outpatient, emergency, and other ancillary services from its locations in Connersville, Fayette County, Indiana. The hospital and the primary business operations of the Debtor are located at 1941 Virginia Avenue, Connersville, Indiana 47331.

G.      The Debtor's operations include a 46-bed residential substance abuse detoxification treatment facility known as North Star Recovery ("**North Star**") that opened for operations within the last few months.

H.      The Debtor is also a 51% member in Fayette Regional Health System Pain Management, LLC, an Indiana limited liability company that operates a pain management clinic. The remaining 49% ownership in Fayette Regional Health System Pain Management, LLC, is held by Connersville Pain Management, LLC, an unrelated Ohio limited liability company.

I.      At the time of filing, the Debtor had approximately 516 employees (389 full-time and 127 part-time). The Debtor also maintains independent contractor relationships with a variety of individuals and entities that provide healthcare services for the entity's patients.

J.      The Debtor owns real property and improvements at 1941 Virginia Avenue, Connersville, Indiana 47331 (the "Hospital Property"), as well as real property and improvements at other locations in the area, and also leases certain properties for its operations.

## THE CASH COLLATERAL

K.      As of October 9, 2018, the Debtor believes its accounts receivable totaled approximately $18,734,410 of which, approximately $12,116,155 was under 90 days (the "**Accounts Receivable**").

L.      The Debtor further represented that as of the Petition Date, the Debtor's bank accounts, collectively, other than Comerica Bank Account x0696 and the Comerica Sinking Fund

Account x1466, contained cash in the total combined amount of approximately $130,000.00 (the "**Cash**" and together with the Accounts Receivable, the "**Cash Collateral**").

M.   The Debtor further represented that it maintains the following bank accounts with Comerica, with the estimated Petition Date balances as set forth below:

| Account Name | Account No. | Approx. Petition Date Balance |
| --- | --- | --- |
| Operating Account (the "Comerica Operating Account" | x0570 | $50,000 |
| Disbursement Account (Payables Account) | x0539 | $0 |
| Sinking Fund Account | x1466 | $204,500 |
| Cash Collateral Account for Letter of Credit | x0696 | $198,000 |
| Inactive Account (Insurance Claims Acct) | x0513 | $0 |
| Inactive Account (FSA Account) | x0521 | $0 |

(together, the "Comerica Bank Accounts")

## FINANCIAL AND ORGANIZATIONAL STRUCTURE

N.   By virtue of the loan documents and the transactions described in more detail in the Motion, including but not limited to, the Master Trust Indenture and the supplements thereto, The Bank of New York Mellon Trust Company, as successor trustee to Fifth Third Bank of Central Indiana ("**BNY**" or the "**Bond Trustee**") claims a security interest in, among other collateral, the Cash Collateral[2] and Comerica Bank ("**Comerica**") claims a security interest in all Comerica Bank Accounts.

O.   AmerisourceBergen Drug Corporation ("ABDC") claims a first priority security interest in inventory sold to the Debtor by ABDC prior to the petition date and the proceeds thereof (the "**ABDC Collateral**").

---

[2] The Bond Trustee also claims that Wells Fargo Bank, N.A. is a *de minimis* holder and that its interests are *pari passu* with Comerica's interests granted to the Bond Trustee under the Master Trust Indenture (as amended). The Bond Trustee also claims a security interest by virtue of the secured notes (Series 2013A, 2013B, and 2013C) and all other related documents, including, without limitation, all security agreements, mortgages and other security documents executed by Debtor in favor of the Bond Trustee.

4

P.      The Debtor has indicated it is unaware of any other creditors claiming a security interest in the Debtor's Cash Collateral.

### RELIEF REQUESTED BY THE DEBTOR

Q.      By the Motion, the Debtor seeks entry of an order authorizing the Debtor to utilize Cash Collateral in accordance with the budget attached hereto as Exhibit A (the "**Budget**") and seeks authority to provide adequate protection to the Bond Trustee, to Comerica and to ABDC.

R.      The Debtor contends that if it is not permitted to use the Cash Collateral, it will be unable to pay necessary expenses for labor, material and services related to the operation of its business, and as such, entry of this Order will enhance the possibility of maintaining the value of estate assets for the benefit of all creditors and equity interests, including the Bond Trustee and Comerica.

S.      The Debtor asserts that the Cash Collateral will be used by the Debtor to pay actual expenses of the estate necessary for: (1) the maintenance and preservation of assets, including adequate protection payments as authorized or directed by the Court; (2) the continued costs of operating its business, including payment of payroll and employee-related expenses, equipment leases, cost of supplies, third party services, and insurance expenses; (3) professional fees incurred and authorized to be paid in this bankruptcy case, and (4) to pay the fees due the Office of the United States Trustee, if any, during the relevant time period, all as more fully described in the Budget attached as Exhibit A.

### RESERVATION OF RIGHTS

T.      Notwithstanding any other provision herein, the Debtor, the United States Trustee, the Committee (if one is appointed in this case), and any creditor or party in interest shall have the right to challenge the claims of BNY, Comerica and/or ABDC to first priority perfected security interests and liens in the Cash Collateral, or any other assets of the Debtor, on or before expiration of the period ending on the earlier of 90 days from appointment of a Committee or 120 days from the Petition Date.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:**

1. <u>Authorization to Use Cash Collateral</u>. Debtor may use Cash Collateral to fund payment of expenses as and when budgeted in the Budget, with a variance of up to 5% per line item allowed, provided the aggregate amount of expenditures does not exceed the aggregate Budget. Debtor's use of Cash Collateral for any particular line item in the Budget may not exceed the budgeted amount set forth in such line item plus the variance. Debtor shall not use Cash Collateral except as provided in this Order. Unless extended by the Court upon the written agreement of the Bond Trustee, Comerica the Debtor, and the Committee (if one is appointed in this case), this Order and the Debtor's authorization to use Cash Collateral pursuant to this Order will immediately terminate on the earlier to occur of (the "**Termination Date**"): (a) the date on which the Bond Trustee or Comerica provide, via facsimile or overnight mail, written notice to the Debtor and Debtor's counsel of the occurrence of an Event of Default (as defined below) and the expiration of a three (3) business day cure period; or (b) December 7, 2018.

2. <u>Payment of Post-Petition Taxes</u>. The Debtor shall pay when due, all taxes, insurance, assessments and governmental and other charges accrued post-petition, including any and all federal and state withholding taxes, and shall provide to the Bond Trustee and Comerica, on request, copies of depository receipts or other satisfactory evidence of the same.

3. <u>Termination of the Right to Use Cash Collateral</u>. An Event of Default for purposes of this Order shall include, but not be limited to:

   a. Failure to comply with any of the adequate protection or reporting obligations set forth herein;

   b. Failure to comply with any terms of this Order;

   c. The Debtor makes any payment not set forth in the Budget, except that, as necessary to maintain the business operations, the Debtor may exceed the budgeted expenditures in a particular category only to the extent the Debtor limits or reduces its expenditures in other categories, so the resulting effect is that the total expenditures during the budget period do

    not exceed 105% of the total expenses outlined in the Budget; and/or

  d. Dismissal or conversion of this case or appointment of a Chapter 11 trustee or examiner.

Upon the occurrence of an Event of Default (that is not cured within the 3 business day cure period), Debtor shall segregate and account for all Cash Collateral then in its possession or control and the Bond Trustee and Comerica shall be entitled to seek relief from the automatic stay under § 362 of the Bankruptcy Code.  If the Order is terminated: (1) the obligations of the Debtor and the rights of the Bond Trustee and Comerica, with respect to all transactions which have occurred prior to the Termination Date, shall remain unimpaired and unaffected; (2) the Bond Trustee, Comerica, and the Debtor shall retain all of their respective rights and remedies under the Bankruptcy Code, including, without limitation, the Debtor's right to request the continued use of Cash Collateral, and the rights of the Bond Trustee and/or Comerica to contest such continued use of Cash Collateral, and (3) Debtor shall continue to segregate and account for all Cash Collateral then in its possession or control, and Bond Trustee and Comerica shall continue to have the right to apply for relief from the stay under § 362 of the Bankruptcy Code.   The Debtor waives the right to object to expedited hearing on any such moton for relief from the stay.

  4. <u>Replacement Liens for the Bond Trustee.</u>  To the extent the Bond Trustee has valid, enforceable, perfected, and unavoidable prepetition liens on or security interests in the Cash Collateral (the "**Bond Trustee Prepetition Liens**"), as adequate protection under § 363 of the Bankruptcy Code for Debtor's use of Cash Collateral and any diminution in value of the prepetition Cash Collateral and other collateral of the Bond Trustee, the Bond Trustee is hereby granted a continuing and replacement security interest and post-petition liens, which shall be priority liens in the following property of the Debtor as described in the 2013 BNY UCC-1:

> All of the Debtor's right title and interest in and to: (i) the Gross Revenues (subject in all cases to Permitted Encumbrances) as defined in the Master Trust Indenture between Fayette Memorial Hospital Association, Inc. and The Bank of New York Mellon Trust Company, N.A. (ultimate successor to Fifth Third Bank of Central

    Indiana), as Trustee (the "Trustee"), dated as of November 1, 1992 (as amended, the "Master Indenture"); and (ii) any and all moneys and securities held by the Trustee pursuant to the Master Indenture. Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Master Indenture.

and in the collateral described in the 2016 Mortgage and the 2016 BNY UCC-1, expressly excluding claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(b) (together, the "**Bond Trustee Collateral**").

  Such replacement liens in the post-petition Bond Trustee Collateral shall be to the same extent and with the same validity and priority that the Bond Trustee held prepetition, subject only to the claim of the Office of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a) (the "**Bond Trustee Replacement Liens**"). The Bond Trustee Replacement Liens: (1) are and shall be in addition to the Bond Trustee Prepetition Liens; and (2) shall remain in full force and effect notwithstanding any subsequent conversion of the Bankruptcy Case. None of the Bond Trustee's prepetition interests, including any security interest in or any right of set off against the Comerica Bank Accounts, are impaired by this order, generally, or by Debtor's ability to use Cash Collateral.

  5. <u>Replacement Liens for Comerica</u>. To the extent Comerica has valid, enforceable, perfected, and unavoidable prepetition liens on or security interests in the Cash Collateral (the "**Comerica Prepetition Liens**"), as adequate protection under § 363 of the Bankruptcy Code for Debtor's use of Cash Collateral and any diminution in value of the prepetition Cash Collateral, including the Comerica Bank Accounts, Comerica is hereby granted a continuing and replacement security interest and post-petition liens, which shall be priority liens, in the following property of the Debtor (as described in the Comerica UCC-1) and together with the Comerica Bank Accounts, but notwithstanding the language of the collateral description below, expressly excluding claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(b) (the "**Comerica Collateral**"):

8

    a. all of Debtor's right, title and interest (including without limitation, security entitlement) in custodial securities account no. [x0696] maintained at [Comerica], all sub-accounts thereof (collectively, the "Accounts") and all cash, securities, investment property or financial assets now or hereafter deposited or maintained in, or credited to, the Account, and any and all securities accounts in substitution or replacement thereof;

    b. all general intangibles (including without limit software) acquired or used in connection with the above; and

    c. all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock splits, stock rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor.

Such replacement liens in the Comerica Collateral shall be to the same extent and with the same validity and priority that Comerica held prepetition, subject only to the claim of the Office of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a) (the "**Comerica Replacement Liens**"). The Comerica Replacement Liens: (1) are and shall be in addition to the Comerica Prepetition Liens; and (2) shall remain in full force and effect notwithstanding any subsequent conversion of the Bankruptcy Case. None of Comerica's prepetition interests, including any security interest in and any right of set off against the Comerica Bank Accounts, are impaired by this order, generally, or by Debtor's ability to use Cash Collateral.

    6.    <u>Replacement Liens for ABDC</u>. To the extent ABDC has valid, enforceable, perfected, and unavoidable prepetition liens on or security interests in the Cash Collateral used by the Debtor (the "**ABDC Prepetition Liens**"), ABDC is hereby granted, to the extent the prepetition Cash Collateral suffers a diminution in value, post-petition liens which shall be priority liens in the following post-petition property of the Debtor, as described in the UCC-1 Financing Statement filed by ABDC on or about July 22, 2014 as amended on April 16, 2015 (the "ABDC UCC-1"):

    All of Debtor's inventory purchased or otherwise acquired from [ABDC] or its affiliates, successors, and assigns, whether now owned or hereafter acquired, including without limitation, the proceeds thereof.

9

And expressly excluding claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(b) (the "**ABDC Collateral**").

Such replacement liens in the post-petition ABDC Collateral shall be to the same extent and with the same validity and priority that ABDC held prepetition, subject only to the claim of the Office of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a) (the "**ABDC Replacement Liens**"). The ABDC Replacement Liens: (1) are and shall be in addition to the ABDC Prepetition Liens; and (2) shall remain in full force and effect notwithstanding any subsequent conversion of the Bankruptcy Case.

7. <u>Liens Generally.</u>  Nothing contained in this order is intended to affect or modify the priority of liens as among the Bond Trustee, Comerica or ABDC.

8. <u>Super Priority Administrative Expense Claims</u>.  In the event that the adequate protection provided to Bond Trustee and/or Comerica is insufficient to protect the Bond Trustee or Comerica for Debtor's use of Cash Collateral or for a diminution in value of Bond Trustee, or Comerica's other collateral, then to that extent, Bond Trustee and Comerica's claims shall have priority under § 507(b) of the Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) of the Code (other than U.S. Trustee fees).  The foregoing provision shall not restrict Debtor's payment of administrative expenses, including professional fees and U.S. Trustee fees, provided, that such expenses are in the Budget and Debtor is not then, and will not as a result of such payment be, in default under this Order.

9. <u>Additional Adequate Protection for Comerica</u>.  As additional adequate protection Comerica, and in addition to the replacement liens described above, upon entry of this Order, the automatic stay imposed by § 362 of the Bankruptcy Code is lifted immediately (with the 14 day stay imposed by Bankruptcy Rule 4001(a)(3) waived) to permit BNY and Comerica to, and BNY and Comerica are authorized and directed to:

10

    a. apply all funds in Comerica Sinking Fund Account x1466 to the principal portion of the 2013 Bond Indebtedness evidenced by the 2013A Note (to reduce the interest accrual going forward),

    b. send a notice of non-renewal with respect to the Eastern Alliance LOC, and

    c. reimburse itself first from the Cash Collateral Account For Letter of Credit (x0696), and thereafter, from the Comerica Operating Account (x0570), if the Eastern Alliance LOC is presented for draw (prior to or upon its expiration) for the amount drawn together with the draw fees.

10. <u>Banking Relationships and Reporting Requirements</u>. As additional adequate protection for use of the Cash Collateral, and in addition to the replacement liens described above, upon entry of this Order, the Debtor shall, from and after the Petition Date until repayment of the indebtedness to the Bond Trustee, Comerica, and/or ABDC, as applicable:

    a. Maintain all of its bank accounts at Comerica, other than U.S. Bank lockbox account (x5957);

    b. On a daily basis, transfer all funds from the U.S. Bank lockbox account (x5957) to the Comerica Operating Account (x0570), and utilize the Comerica Operating Account for all disbursements during the term of this Order;

    c. deliver to the Bond Trustee and Comerica: (1) copies of all financial or other information reasonably requested; (2) copies of all operating reports and other financial information filed with the Bankruptcy Court concurrently with the filing thereof; (3) a weekly cash flow statement, on Tuesday of each week, comparing actual receipts and dibursements to the projected receipts and disbursements as set forth in the Budget, (4) all reports or financial information as and when required under Debtor's agreements with Bond Trustee and/or Comerica, and (5) any other reports or information historically provided by the Debtor, with the same frequency and on the same timelines as it has historically been provided;

    d. make a payment in the amount of $30,000 to the Bond Trustee upon entry of this Order;

    e. make a payment in the amount of $70,000 to the Bond Trustee on or before December 1, 2018, and payments in the amount of $100,000 on the first day of each month thereafter;

    f. at all times comply with all laws, statutes, rules, regulations, order and directions of any governmental authority having jurisdiction over the property of the estate;

    g. maintain all insurance coverage required to be maintained under the prepetition agreements with the Bond Trustee and Comerica, and the underlying loan documents and, on request, provide the Bond Trustee and/or Comerica, as applicable, with copies of the current certificates and policies of insurance, and promptly after renewal of

11

    coverage or after the effective date of coverage (in the event there is a change in insurance carriers);

  h. (expressly excluding debt service coverage ratio and liquidity requirements), comply with all other non-monetary obligations under the terms of and, to the extent the Debtor is not already in violation of, the prepetition agreements and underlying loan documents between the Debtor and the Bond Trustee and Comerica;

  i. keep current in deposit and payment of all current tax liabilities as they become due by properly making all federal income tax withholding and FICA tax deposits and all federal FUTA tax deposits; and

  j. timely file any and all necessary Federal tax returns with the Internal Revenue Service.

11. <u>Investment Banker/Financial Advisor</u>.  By not later than November 9, 2018, Debtor shall file an application with the Court seeking authority to engage a firm (or firms) with investment banker and financial advisor capabilities ("**IB**") that is acceptable to Bond Trustee and Comerica, with engagement letter(s) acceptable to Bond Trustee and Comerica, to provide the Debtor with restructuring, financial advisory and investment banking advice and guidance.  Thereafter, Debtor shall work with the IB, Bond Trustee, Comerica, and the Committee (if one is appointed in this case) to develop milestones ("**Milestones**") related to the Debtor's restructuring and/or sale efforts.

12. <u>Additional Adequate Protection for ABDC</u>.  During the term of this Order, ABDC and the Debtor shall exchange such information as may be reasonably necessary to determine the extent, validity, and priority of ABDC's claim in the Prepetition Cash Collateral, and subject to the consent of Comerica and BNY, and the Committee (if one is appointed in this case), the Budget shall be deemed modified and the Debtor shall be authorized to make a payment to ABDC in the amount determined to be a first priority secured claim.  Upon such payment, all obligatons of the Debtor to ABDC pursuant to this Order shall cease.  Any payment made to ABDC remains subject to disgorgement to the extent the claim of ABDC is later disallowed by the Bankruptcy Court.

13. <u>Inspection of Books and Records</u>. Upon five (5) business days' notice by the Bond Trustee and/or Comerica, as applicable, the Debtor shall permit the Bond Trustee and/or Comerica

and their respective agents full and free access to Debtor's books and records in the possession and control of the Debtor, and place of business to verify the existence, condition, and location of property in which the Bond Trustee and/or Comerica claim a security interest and for the purpose of appraisal, audit, examination and inspection. Failure to satisfy this provision of this Order shall not be deemed a technical Event of Default unless determined to be so by the Court. The Bond Trustee and Comerica shall coordinate so as to avoid duplication of efforts and expenses.

14. <u>Rights to Seek Additional Adequate Protection</u>. Notwithstanding any provision herein, the Bond Trustee, Comerica, and/or ABDC may later seek from the estate additional adequate protection other than that stated herein.

15. <u>Force and Effect of Prepetition Documents; Conflicts</u>. Except as modified herein and subject to the other provisions of this Order and the Bankruptcy Code, the underlying loan documents and prepetition agreements among Debtor, Bond Trustee and/or Comerica (collectively "**Prepetition Agreements**"), and the terms and provisions thereof are ratified and confirmed and shall remain in full force and effect. To the extent there exists any conflict among the Motion, the underlying loan documents, the Interim Order and the terms of this Order, this Order shall govern and control.

16. <u>Incurrence of Additional Secured Debt Prohibited</u>. No order shall be entered in this case authorizing the estate to incur debt secured by a lien equal to or superior to the Prepetition or Replacement Liens (the "**Aggregate Liens**"), or given superpriority administrative expense status under 11 U.S.C. § 364(c)(1), unless such debt is sufficient to repay, in full, any debt to the Bond Trustee, and Comerica, without the Debtor obtaining the consent to same from the Bond Trustee and Comerica, or entry of a court order authorizing such debt.

17. <u>No Waiver of Rights under the Prepetition Documents</u>. This Order shall not constitute a waiver by the Bond Trustee, Comerica or ABDC of any of their respective rights under any prepetition agreement with Debtor, the Bankruptcy Code or other applicable law, including,

13

without limitation: (1) the right to assert that, notwithstanding the terms and provisions of this Order, any of their respective interests in the assets of the Debtor and/or Cash Collateral lack adequate protection within the meaning of 11 U.S.C. §§ 362(d) or 363(e); or (2) the right to assert a claim under 11 U.S.C. § 507.

18. <u>Binding Effect of this Order</u>. The terms of this Order constitute a "finding of fact" as to the "adequate protection" of the interests of the Bond Trustee and Comerica, for Debtor's use of both cash and non-cash prepetition collateral of Bond Trustee and Comerica under § 363 of the Code. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral used prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Order).

19. <u>Continued Effect, and Successors and Assigns</u>. This Order shall be and remain in full force and effect notwithstanding conversion of the Bankruptcy Case or entry of an order appointing a Trustee. Without limiting the generality of the foregoing, the Replacement Liens and security interests granted to the Bond Trustee, Comerica, and ABDC shall survive expiration of this Order. Furthermore, the terms and provisions of this Order shall be binding upon and inure to the benefit of the Bond Trustee, Comerica and ABDC, the Debtor, the Committee (if one is appointed in this case), the estate, and their respective successors and assigns, including, without limitation, any Debtor or other fiduciary who hereafter succeeds to Debtor's estate in the Bankruptcy Case or in any succeeding or superseding case or proceeding commenced by or against the Debtor or the estate under the Bankruptcy Code or any similar or subsequent law. Bond Trustee and Comerica, in their sole discretion, may in writing waive any covenant or term of this Order that is for the sole benefit of Bond

14

Trustee and/or Comerica.

20.   <u>Termination of Authority to Use Cash Collateral</u>. The authority to use Cash Collateral granted to the Debtor by this Order shall expire on the Termination Date unless extended by further order of this Court. The Debtor's right to use Cash Collateral pursuant to the terms of this Order may be extended beyond the Termination Date, from time to time upon the filing of a Stipulation by and among the Debtor, the Committee (if one is appointed in this case), the Bond Trustee, and Comerica (the "**Stipulation**") not later than the seventh (7th) business day after the date of expiration of the term of this Order, (the "**Term**") or any subsequently extended Term, which Stipulation shall provide for such an extension, shall include a new Budget for the entire period of such extension, and shall provide that all other appropriate terms and conditions of this Order remain in full force and effect during the period of such extension. Any Stipulation providing for an extension of the Term shall be served on the United States Trustee, all counsel of record and intervenors, and the Committee (if one is appointed in this case). Any objections to any Stipulation must be filed with this Court not later than seven (7) days after the date of the filing of the Stipulation and notice of the Stipulation as provided for in the local rules or by order of the Court. If no objections are timely filed, such Stipulation shall be deemed approved and effectuated pursuant to this Order.  If any objection is timely filed, the Court shall set a hearing to consider the Stipulation and the objection; provided, however, that the Term shall be deemed extended, subject to the terms and provisions of such Stipulation (including any Budget attached thereto), and such Stipulation shall be deemed approved, effective, and binding on Debtor from the date it is filed until further order of this Court after such hearing. If a Stipulation is not timely filed as provided above, or if the Debtor, the Committee (if one is appointed in this case), or the Bond Trustee, or Comerica, earlier file a notice with this Court indicating that it will not enter into such a Stipulation, notice shall be issued and a hearing shall be held as soon as practicable on any request by the Debtor for continued use of Cash Collateral after

expiration of the Term (as it may be extended from time to time).

IT IS FURTHER ORDERED, and NOTICE IS HEREBY GIVEN that a further hearing on the Motion shall be held at 1:30PM EST on the 5th day of December, 2018, before Judge Jeffrey Graham, United States Bankruptcy Court, Birch Bayh Federal Building and United States Courthouse, 46 E. Ohio Street, Room 311, Indianapolis, Indiana 46204. Any creditor or other interested party having any objection to this Order shall file a written objection with the Clerk, United States Bankruptcy Court, 46 E. Ohio Street, Room 116, Indianapolis, Indiana 46204, and serve it upon the Office of the United States Trustee, Attn. Ronald Moore, 101 W. Ohio Street, Ste. 1000, Indianapolis, IN 46204 (e-mail: ronald.moore@usdoj.gov); counsel for the Debtor, Wendy D. Brewer, Fultz Maddox Dickens PLC, 333 N. Alabama Street, Ste. 350, Indianapolis, IN 46204 (e-mail: wbrewer@fmdlegal.com) and Laura M. Brymer, Fultz Maddox Dickens PLC, 101 S. Fifth Street, 27th Floor, Louisville, KY 40202 (email: lbrymer@fmdlegal.com); counsel for the Bond Trustee, Alan K. Mills, Barnes & Thornburg LLP, 11 S. Meridian Street, Indianapolis, IN 46204 (e-mail: amills@btlaw.com); and counsel for Comerica, Jaimee L. Witten and Robert Diehl, Bodman PLC, 6th Floor at Ford Field, 1901 St. Antoine Street, Detroit, MI 48226 (e-mail: jwitten@bodmanlaw.com and rdiehl@bodmanlaw.com), and counsel for ABDC, Morton R. Branzburg, Klehr Harrison Harvey Branzburg, LLP, 1835 Market Street, Suite 1400, Philadelphia, PA 19103 (email: mbranzburg@klehr.com) not later than three (3) business days prior to the hearing.

IT IS FURTHER ORDERED that the Debtor shall serve a copy of this Order and notice by first class mail, facsimile or e-mail, within one (1) business day from the date hereof, on the Office of the United States Trustee, the Bond Trustee, Comerica, ABDC, the Debtor's other secured creditors, the Debtor's 20 Largest Creditors or the Committee (if one is appointed in this case), and all intervenors and counsel of records, to the extent such persons/entities do not already receive a copy through the Court's electronic filing system.

# # #

Fayette Regional Health System
Weekly Cash Flow Budget
For Period 11/01/18 through 12/7/18

| | Period 11/1/18-11/9/18 | Week Ending 11/16/18 | 11/23/18 | 11/30/18 | 12/7/18 |
|---|---|---|---|---|---|
| **Beginning Operating Cash Balance** | 293,908 | 653,908 | 250,608 | 415,108 | 189,108 |
| Cash Receipts (Patient) | 1,100,000 | 725,000 | 750,000 | 775,000 | 825,000 |
| Cash Receipts (340B) | | 45,000 | 25,000 | 45,000 | |
| Cash Receipts (Grant/Gift) | | | | | |
| **Total Cash Receipts** | 1,393,908 | 1,423,908 | 1,025,608 | 1,235,108 | 1,014,108 |
| **Operating Expenses** | | | | | |
| Payroll, Taxes, Child Support, Retirement | 334,000 | 835,000 | 42,000 | 790,000 | 38,000 |
| Group Insurance - SIHO (Premiums) | 25,000 | 25,000 | 50,000 | 15,000 | 100,000 |
| Employee Benefits | 15,000 | 40,000 | 10,000 | 10,000 | 10,000 |
| Contract Labor Non-physician | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 |
| Systems Support | 21,000 | 15,000 | 25,000 | 0 | 41,000 |
| Athena EMR System | 0 | 0 | 105,000 | 0 | 0 |
| Purchased Services | 35,500 | 63,000 | 65,500 | 65,500 | 105,000 |
| Professional Fees - Physician Only | 149,000 | 24,300 | 26,000 | 24,300 | 111,000 |
| Supplies (chargeable, drug, IV) | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Office Supplies | 0 | 1,000 | 0 | 0 | 1,000 |
| Minor Equipment Expense | 500 | 0 | 0 | 0 | 500 |
| Postage/Freight | 0 | 0 | 1,000 | 0 | 0 |
| Repairs/Mainenance | 0 | 0 | 0 | 0 | 0 |
| Rental charge | 0 | 0 | 0 | 0 | 0 |
| Sponsorship/Marketing | 0 | 0 | 0 | 0 | 0 |
| Insurance - General Liability | 0 | 0 | 53,000 | 0 | 0 |
| Utilities Electric | 0 | 0 | 73,000 | 0 | 0 |
| Utilities Water | 0 | 10,000 | 0 | 0 | 0 |
| Utilities Gas | 0 | 7,000 | 0 | 0 | 0 |
| Utilities Phone/Internet | 0 | 0 | 0 | 18,200 | 0 |
| Property Taxes | 0 | 30,000 | 0 | 0 | 0 |
| Legal Fees (Special Counsel) | 0 | 0 | 0 | 0 | 0 |
| Auditing/Accounting Fees (Possible) | 0 | 0 | 0 | 0 | 0 |
| Robert Half Agency (Interim CFO) | 7,000 | 0 | 0 | 0 | 0 |
| Security deposit - Utilities | 0 | 0 | 37,000 | 0 | 0 |
| Possible Critical Vendor Payments | 0 | 0 | 0 | 0 | 0 |
| HIP 2.0 FSSA Fees | 0 | 0 | 0 | 0 | 0 |
| Comerica/BNY/Wells Fargo (adequate protection) | 30,000 | 0 | 0 | 0 | 70,000 |
| Chapter 11 Counsel (interim comp) | 0 | 0 | 0 | 0 | 25,000 |
| Committee Counsel Fees (interim comp) | 0 | 0 | 0 | 0 | 0 |
| Debtor's Financial Advisor Fees (interim comp) | 0 | 0 | 0 | 0 | 50,000 |
| Claims and Noticing Agent (per local rules) | 0 | 0 | 0 | 0 | 10,000 |
| US Trustee Fees (1% of quarterly disb) | 0 | 0 | 0 | 0 | 0 |
| **Total Operating Expenses** | 740,000 | 1,173,300 | 610,500 | 1,046,000 | 684,500 |
| **Net Cash Flow** | | | | | |
| **Ending Cash Balance** | 653,908 | 250,608 | 415,108 | 189,108 | 329,608 |

**EXHIBIT A**